UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>BRIAN STONE,<br><br>    Defendant. | No. 2:16-CR-00038-MCE<br><br>**ORDER** |

Defendant Brian Stone ("Defendant") was convicted after a jury trial of multiple counts of both Mail Fraud in violation of 18 U.S.C. § 1341 and Wire Fraud in violation of 18 U.S.C. § 1343. He was sentenced on September 27, 2018, to seventy-two (72) months of imprisonment. Presently before the Court is Defendant's Motion for Compassionate Release. ECF No. 426. The Government opposes Defendant's request. ECF No. 429. For the reasons that follow, his Motion is DENIED.

Defendant contends that due to his extraordinary and compelling health situation, and especially in light of the COVID-19 epidemic, he should be released prior to his current anticipated release date in November 2023. Def.'s Mot., ECF No. 426, at 6. According to Defendant, "he has limited ability to provide self-care for himself in prison," and "his multiple comorbidities place him within the group of persons most likely to suffer a fatal COVID-19 infection." Id.

More specifically, Defendant is 61 years old, and "[p]rior to his incarceration, [he] suffered from high blood pressure." Id. at 7. "On July 1, 2019, while in custody [he] suffered a stroke (described as a right basal ganglion CVA)." Id. Defendant was hospitalized and then returned to his institution, FCI Lompoc. Later, at the end of September 2019, Defendant began presenting symptoms of another stroke. Id. at 8. "The treating physician at Lompoc found that a transient ischemic attack and 'disorder of brain not otherwise specified' was indicated." Id. "On October 1, 2019, . . . a neurologist, wrote that [Defendant] appeared to suffer from "rapidly progressive dementia" based on that doctor's conversation with [a Lompoc staff physician]." Id. The record also contains additional notations chronicling Defendant's cognitive decline and need for assistance from other inmates through October 2019. Id.

Defendant's "medical records list his medical problems as including diabetes, hyperlipidemia (high blood cholesterol level), disorder of the brain, otherwise unspecified, hypertension, and unspecified depressive disorder." Id. at 9. He has also been diagnosed with Binswanger's disease, which "is a form of small vessel vascular dementia caused by damage to white brain matter" that is progressive and uncurable. Id. at 9-10. Defendant thus seeks release both given his decline in health and the additional risks posed now that we are in the midst of a viral pandemic to which he is particularly susceptible. Though these conditions are both serious and chronic, Defendant's release would nonetheless be inappropriate.

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." Dillon v. United States, 560 U.S. 817, 824 (2010) (alterations in original; quoting 18 U.S.C. § 3582(b)). Those circumstances are delineated in 18 U.S.C. § 3582(c). "Effective December 21, 2018, the First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A) to permit an inmate, who satisfies certain statutorily mandated administrative procedures, to file a motion with the district court for compassionate release." Riley v. United States, 2020 WL 1819838, at *5 (W.D. Wash. Apr. 10, 2020)

(citing 18 U.S.C. § 3582(c)(1)(A)).  That statute now provides:

> **(c) Modification of an imposed term of imprisonment.**—
> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

"Thus, the First Step Act amended § 3852(c)(1)(A) to allow prisoners to directly petition a district court for compassionate release, removing the BOP's prior exclusive gatekeeper role for such motions."  Riley, 2020 WL 1819838, at *5.  "The statute now provides the court with authority to reduce a sentence upon the motion of a defendant if three conditions are met:  (1) the inmate has either exhausted his or her administrative appeal rights of BOP's failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established 'extraordinary and compelling reasons' for the requested sentence reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement."  Id. (footnote omitted).

The starting point for the policy statement referenced in the third prong is United States Sentencing Guidelines ("USSG") § 1B1.13, which provides:

3

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

Since Defendant was not sentenced pursuant to 18 U.S.C. § 3559(c), he is only "entitled to relief if he demonstrates that (1) extraordinary and compelling reasons warrant a sentence reduction, (2) he is not a danger to the safety of others or the community, and (3) any requested reduction is consistent with the policy statement." Riley, 2020 WL 1819838, at *6.

"The Sentencing Commission's application notes to this policy statement provide further guidance." Id. Indeed, the notes explain that "extraordinary and compelling reasons" exist when:

> (A) Medical Condition of the Defendant.
>
> . . . .
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the

4

> environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1 (emphasis added).

Here, Defendant contends he suffers from serious physical or medical conditions and/or that his conditions have deteriorated such that it has substantially diminished his ability to provide self-care. He also takes the related position that those conditions make him particularly vulnerable to COVID-19 such that he qualifies for release.[1] The burden is on Defendant. United States v. Holden, 2020 WL 1673440, at *3 (D. Or. Apr. 6, 2020). He has not met that burden here.[2]

Having presided over this case for years, including through a jury trial and sentencing of all three co-defendants, the Court is intimately familiar with both this Defendant and the facts of this case. As a result, it absolutely agrees with the Government that, even assuming Defendant's medical conditions are so severe and debilitating that they sufficiently affect his ability to care for himself, release would be inappropriate under 18 U.S.C. § 3553(a), particularly because Defendant remains a danger to the community.

This case centered around a conspiracy to commit arson to burn down commercial buildings in order to collect insurance proceeds. That scheme underlies all thirteen counts for which Defendant was convicted. This is no small crime of convenience or opportunity. Instead these were crimes of greed that endangered the community each time a fire was set, presenting unique and unpredictable risks to neighbors and first responders. These were crimes that took methodical planning, diabolical scheming, and a healthy dose of arrogance. Despite the very clear evidence against him, Defendant nonetheless refused to take responsibility for his misdeeds.

---

[1] Since the filing of his Motion, Defendant has tested positive for COVID-19, although he remains asymptomatic. Given the uncertainties as to whether an individual can be re-infected, it does not appear that his request is legally moot.

[2] The Court is cognizant that the Government takes the position that Defendant's pending appeal divests this Court of jurisdiction over Defendant's request. Since Defendant's Motion fails on the merits, however, the Court need not reach this issue.

As a former attorney, Defendant should have known better. He was disbarred well before this case for misappropriating client funds. True to form, however, he denied any wrongdoing to the State Bar of California and never expressed any remorse. His failure to comprehend or adhere to the most basic professional rules governing the maintenance of his esteemed license demonstrates a complete disregard for authority or the rule of law.

Even in prison, and after issuance of the medical diagnoses giving rise to this Motion, Defendant was charged with and convicted of misusing the prison telephone system. That is, Defendant allowed another inmate to use his phone account. He did not present a defense and lost 27 days of good conduct time and 90 days of visiting, telephone, and commissary privileges. If this was Defendant's only historical transgression, it might be written off as a lapse in judgment. Viewed in context, it is a way of life.

At the end of the day, Defendant has built and destroyed himself professionally multiple times by repeatedly choosing to do the wrong thing. He did the wrong thing when he mismanaged his client's funds. He did the wrong thing when he engaged in the conduct underlying this case. He did the wrong thing when he misused his telephone privileges in prison. And he did the wrong thing over and over again by failing to take responsibility for any of his actions. Given the foregoing, the Court finds it inevitable that this Defendant will wreak economic havoc on the community if released.[3] More than that, the Court has no doubt that if left to his own devices, this Defendant, who the Court emphasizes is currently positive for COVID-19, will almost certainly refuse to follow health directives and will further the spread the virus throughout the community.[4]

---

[3] In fact, given Defendant's particular ailments, the record does not foreclose the possibility that Defendant poses even more of a risk to the community now than he did previously, given his purported diminished mental capacity.

[4] In any event, the Court is not convinced that Defendant is at any higher level of risk in the BOP facility than he would be in the public. According to Defendant's medical records, Defendant has been monitored on a daily basis since testing positive, but he still presents as asymptomatic. Perhaps more importantly, however, based on the numbers before the Court, the mortality rate in FCI Lompoc is miniscule compared to the numbers being reported by the Center for Disease Control ("CDC") for the

Having found that Defendant is a danger to the community and having considered all of the factors set forth in 18 U.S.C. § 3553(a), the Court thus concludes that release would be inappropriate.  Defendant's Motion to Reduce Sentence (ECF No. 426) is DENIED.

IT IS SO ORDERED.

Dated:  May 29, 2020

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

United States as a whole.  As of May 27, 2020, the CDC was reporting 1,678,843 COVID-19 cases in the United States and 99,031 deaths, which results in a mortality rate of 5.9%.  See https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.  In comparison, according to Defendant, from the time FCI Lompoc started testing through May 10, 2020, FCI Lompoc had reported 842 positive COVID-19 tests.  To date, however, FCI Lompoc is reporting only one death.  See https://www.bop.gov/coronavirus/.  The resulting mortality rate, which is based on the total positive tests from over two weeks ago (which now likely includes even more positive tests) and the current number of deaths, equates to just 0.12%.  These numbers do not include the FCI Lompoc staff members who have tested positive, with no additional deaths.  Id.  Either the data is flawed, or the risks posed by remaining housed at FCI Lompoc are less than those posed to the general public.

7